IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROBERT S. GAVOLA et al., § | |
| § | |
| Plaintiffs, § | |
| vs. § | Civil Action No. 3:11-CV-3528-O |
| § | |
| JEREMY ASBRA et al. § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**

Pursuant to the order of reference dated October 17, 2016 (doc. 204), before the Court is *Plaintiffs' Motion for Sanctions*, filed July 8, 2016 (doc. 203). Based on the relevant filings and applicable law, the motion should be **DENIED**.

**I. BACKGROUND**

This action arises from a real estate investment by Robert S. Gavola, Linda A. Gavola, and the Robert S. and Linda A. Gavola Family Trust (Plaintiffs) involving the purchase of a property in St. Louis, Missouri. (*See* doc. 95 at 5, 13, 20-45.)[1]

**A.    Federal Proceedings**

On September 7, 2011, Plaintiffs filed suit against Jeremy Asbra (Asbra) and Advanced Financial Concepts, Inc. (AFC) (the Asbra Defendants) and Windsor Property and Surety, LLC, WCM Direct, LLC, TGB Investments, Inc., Carl Hampton, and Fred Gardenour (the Windsor Defendants)[2] in the United States District Court for the Central District of California. (doc. 1.) On December 20, 2011, the California court transferred the case to the Northern District of Texas

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2] This group of defendants have been collectively identified as both the Windsor Defendants and the Hampton Defendants in different court filings and documents. (*See, e.g.,* docs. 84, 195, 196.)

(federal Texas case).[3] (docs. 37, 38.)

On July 9, 2012, the Windsor Defendants and the Asbra Defendants filed a joint motion to dismiss. (doc. 84.) At a hearing on September 26, 2012, the district court deferred ruling on the motion and ordered Plaintiffs to file a proposed amended complaint. (doc. 94.) On October 10, 2012, Plaintiffs filed a third amended complaint. (doc. 95.) Plaintiffs sought, among other things, a judgment against the defendants for negligent misrepresentation, various types of fraud, violations of California securities law, and material misrepresentations. (*Id.* at 22, 26-27, 34.) They sought an accounting from the Asbra Defendants of all profits made with use of their money, and they alleged that the Asbra Defendants failed to pay an account, breached their fiduciary duty, and violated ERISA. (*Id.* at 20, 36-37.)

On November 5, 2012, Plaintiffs moved to voluntarily dismiss their own claims against the Asbra Defendants *without prejudice* under Rule 41(a)(2) "in order to maintain diversity jurisdiction."[4] (doc. 101.) Both the Asbra Defendants and the Windsor Defendants objected to the voluntary dismissal. (docs. 103, 104.) The district court granted Plaintiffs' motion on November 14, 2012, and entered an order dismissing the Asbra Defendants *without prejudice* from the federal

---

[3] The California federal court relied on the parties agreement to apply Texas law and a mandatory forum selection clause in a short term business loan agreement and a debt-to-equity conversion agreement signed by Plaintiffs. (doc. 37 at 5, 33) (noting "[t]he parties agreed to litigate disputes relating to their investment agreements in Texas, and the Court will enforce this contractual mandate").

[4] Plaintiffs' motion stated:

The procedural issues can be simply resolved, however, by dismissing defendants Jeremy Asbra and Advanced Financial Concepts, Inc., from this case, as the remaining defendants are admittedly completely diverse from the plaintiffs . . . . As such, *the Court can maintain jurisdiction over the plaintiffs' claims against Hampton defendants based on diversity of citizenship, and plaintiffs can proceed with their claims against defendants Asbra and Advanced Financial Concepts, Inc. in State court.*

(doc. 101 at 3) (emphasis added).

2

Texas case. (doc. 106.)

Plaintiffs and the Windsor Defendants then entered into a separate settlement on March 26, 2013, and signed a formal settlement agreement and release on May 21, 2013 (2013 Settlement Agreement). (*See* docs. 185; 203-8 at 14-27.) Neither of the Asbra Defendants were expressly identified as a party to the settlement,[5] and no additional parties were covered by the terms of the agreement.[6] (doc. 203-8 at 14-16, 21.) The joint motion to dismiss by Plaintiffs and the Windsor

---

[5] In relevant part, the 2013 Settlement Agreement states:

> This Settlement Agreement and Mutual Release (the "Agreement") is made effective by and between the following parties:
> - a. **Plaintiff Robert S. Gavola**;
> - b. **Plaintiff Linda A. Gavola**;
> - c. **Plaintiff Robert S. And Linda Gavola Family Trust** (including its officers, directors, members, owners, parent and subsidiary entities, affiliates, employees, agents, beneficiaries, trustees, and anyone acting on or for its behalf);
> - d. **Defendants Windsor Property and Surety, LLC** (including its current and former officers, directors, members, owners, parent and subsidiary entities, affiliates, employees, and agents, including but not limited to Carl Hampton, Fred Gardenour and Laura Virtue;
> - e. **Defendant WMC Direct, LLC** (including its current and former officers, directors, members, owners, parent and subsidiary entities, affiliates, employees, and agents, including but not limited to Carl Hampton, Fred Gardenour and Laura Virtue;
> - f. **Defendant TGB Investments, Inc.**(including its current and former officers, directors, members, owners, parent and subsidiary entities, affiliates, employees, and agents, including but not limited to Carl Hampton, Fred Gardenour and Laura Virtue;
> - g. **Defendant Carl Hamptom, whose given name is Carl Battle, including but not limited to any family member of Mr. Hampton**;
> - h. **Defendant Fred Gardenour, including but not limited to any family member of Mr. Hampton**.

(doc. 203-8 at 14-15.)

[6] In relevant part, the 2013 Settlement Agreement states:

> **5.9 No Third Party Beneficiaries.** There are no third party beneficiaries of this Agreement, and the Agreement applies only to the parties identified in it. Other than the parties identified in this Agreement, there is no other person or entity that has given or provided consideration to support any claim that such other person or entity is entitled to benefit from this Agreement.

(doc. 203-8 at 21.)

Defendants was granted on June 25, 2013. (docs. 195, 196.) The order of dismissal noted, "the Court will retain continuing jurisdiction to enforce the Settlement Agreement and its terms." (doc. 196 at 1.)

**B.    State Proceedings and Arbitration**

After dismissing the Asbra Defendants from the federal Texas case, but before Plaintiffs entered into the 2013 Settlement Agreement with the Windsor Defendants, Plaintiffs filed suit alleging fraud, breach of fiduciary duty, and violations of the California Securities Act against the Asbra Defendants in the Superior Court of California, Riverside County, on November 29, 2012 (Riverside case).[7] (doc. 203 at 5-6.) The Asbra Defendants defaulted.[8] (*Id.* at 5.)

   *1.    Dallas case*

On December 12, 2012, the Asbra Defendants filed suit in the 101st Judicial District Court in Dallas County, Texas, against Plaintiffs (Dallas case).[9] *See* Plaintiffs' Original Petition at 6-9, *Asbra v. Gavola*, No. DC-12-14084 (101st Dist. Ct., Dallas County, Tex. Dec. 4, 2012). They sought a declaratory judgment regarding a short term business loan agreement and a debt-to-equity conversion agreement signed by Plaintiffs,[10] and they alleged breach of contract, business

---

[7] In addition to the Asbra Defendants, Plaintiffs also named Beacon Associates, Inc. and CSJ Services, Inc. as defendants in the California proceedings. (*See* doc. 203-3 at 2.) Because neither Beacon nor CSJ are parties to the pending motion for sanctions, however, they are not discussed.

[8] The parties do not provide the date of the default in the Riverside case. Based on the filings in the Dallas case, however, it appears to have occurred after the Dallas case was filed on December 12, 2012 and before a temporary restraining order was signed on June 12, 2013. *See* Plaintiffs' Original Petition at 1-9, *Asbra v. Gavola*, No. DC-12-14084 (101st Dist. Ct., Dallas County, Tex. Dec. 4, 2012); Temporary Restraining Order at 1-3, *Asbra v. Gavola*, No. DC-12-14084 (101st Dist. Ct., Dallas County, Tex. June 12, 2013).

[9] In the Dallas case, the Asbra Defendants were the plaintiffs and Plaintiffs were the defendants. For consistency, however, all identification will be based on their classification in the federal Texas case.

[10] In transferring the case to Texas, the California federal court relied on the parties' agreement to apply Texas law and a mandatory forum selection clause in these agreements. (*See* doc. 37 at 5, 33) (noting "[t]he parties agreed to

4

disparagement, and libel. *Id.* at 6-8. The Asbra Defendants obtained a temporary restraining order on June 12, 2013, enjoining Plaintiffs from pursuing a default judgment or any other proceedings in the Riverside case. *See* Temporary Restraining Order at 2, *Asbra v. Gavola*, No. DC-12-14084 (101st Dist. Ct., Dallas County, Tex. June 12, 2013); (*see also* doc. 203-3 at 3.)

After a hearing on June 23, 2013, the Dallas state court dissolved its temporary restraining order and denied the application for entry of a temporary injunction against Plaintiffs to "enjoin the lawsuit pending in the [Riverside case] filed by [Plaintiffs] against [the Asbra Defendants] and other parties." (doc. 203-3 at 2-3.) It found that the Riverside court had acquired dominant jurisdiction over the dispute, the Asbra Defendants were "dilatory" in responding to the Riverside case, AFC had not demonstrated standing to pursue the claims alleged in the Dallas proceeding, "[n]o clear equity for enjoining the California lawsuit has been demonstrated[,] and this Court must defer to the California Court as a matter of comity." (*Id.*) It then abated the Dallas case pending the outcome of the Riverside case. (*Id.* at 3.)

### 2. *Riverside case and Arbitration*

The Riverside court set aside the Asbra Defendants' default. (doc. 203 at 5.) The parties then entered into a written stipulation to arbitrate their suit. (*Id.*) Based on their agreement, the court entered an order on March 19, 2014, for "final binding confidential arbitration in accordance with the provisions of the [Inland Valley Arbitration and Mediation Service] Administrative and Arbitration Rules." (doc. 203-7 at 6-12.)

On November 9, 2014, the Asbra Defendants filed a motion in the arbitration proceedings to dismiss the claims against them on grounds that they were covered by the release in the 2013

---

litigate disputes relating to their investment agreements in Texas, and the Court will enforce this contractual mandate").

5

Settlement Agreement between Plaintiffs and the Windsor Defendants, because they were agents of Windsor Property and Surety, LLC, Carl Hampton, and Fred Gardenour. (doc. 203-4 at 2-11.) The arbitration began on November 10, 2014, and the motion to dismiss was denied without prejudice at the outset.[11] (*See* docs. 203-5 at 2; 203-6 at 4.) Evidence was received, exhibits were submitted by both sides, and the arbitration concluded on January 5, 2015. (docs. 203 at 6; 203-5 at 1.) The arbitrator issued his decision on May 21, 2015, awarding Plaintiffs $537,100.[12] (*See* doc. 203-5 at 16-17.) He concluded:

> 1.  The evidence has established that the investment which the Gavolas made, based upon the representations made to them by Carl Hampton and Asbra, were lost, which loss was not caused by the Gavolas' conduct, in any respect, but primarily by Asbra and those from whom he took his information and instructions, namely Carl Hampton, operating the entity known as "Windsor Property and Surety." As indicated above, *the conduct of Respondent Asbra alone, was in breach of his fiduciary duties to the claimants*, as alleged in the complaint, resulting in actual damages to the Gavolas in the amount of $360,000.
>
> 2.  For the violations of Corporations Code § 25401/25501, the damages are fixed at $107,100, derived from the interest on the consideration paid (already found in paragraph #1 above), less the income received by the Gavolas.
>
> 3.  As a fiduciary to the Gavolas, Asbra's failing to personally investigate and observe the condition of the property to which he directed the Gavolas' investment, and to report his personal findings to the Gavolas, renders him responsible for the damages caused to the Gavolas for his commission of constructive fraud as discussed above. Damages for the tort of constructive fraud in this matter are assessed as $70,000.

(*Id.*) (emphasis added). The arbitrator limited his decision to Asbra, individually, and found that the

---

[11] The Asbra Defendants' motion to correct the arbitration award, filed after the arbitrator issued his decision, indicates that they moved for reconsideration of their motion to dismiss after evidence was received in the arbitration, but the motion was not addressed by the arbitrator. (*See* doc. 203-6 at 4.)

[12] The arbitrator granted the Asbra Defendants' motion to take judicial notice in the arbitration proceedings of the "opinion and ruling" in the federal Texas case. (doc. 203 at 4 n.2.)

6

evidence was insufficient to support an award against AFC.[13] (*Id.* at 17.)

On June 30, 2015, the Asbra Defendants moved to correct the award ordered in the arbitrator's decision. (doc. 203-6 at 2-5.) They argued, in part, that the arbitrator did not address payments made in relation to the 2013 Settlement Agreement, including set-offs or credit for amounts paid under the settlement agreement, and that other parties involved in the 2013 Settlement Agreement were not part of the arbitration. (*Id.* at 3.) They also noted that the arbitrator never ruled on their motion for reconsideration of the denial of their earlier motion to dismiss. (*Id.* at 4) (noting "[t]he motion itself could be dispositive, and the evidence submitted with the motion, shows the contribution made by the Joint Tortfeasors").

On November 4, 2015, the Asbra Defendants filed a petition to vacate or correct the arbitration award with the Riverside court. (docs. 203-7 at 2-70; 203-8 at 1-86.) They requested that award be corrected because the amount was not calculated correctly and the arbitrator exceeded his authority. (*Id.* at 4.) They also moved to vacate the award in its entirety and to have a new hearing on grounds that misconduct of the arbitrator substantially prejudiced their rights, the arbitrator exceeded his authority and the award could not be fairly corrected, and the arbitrator unfairly refused to postpone the hearing or to hear evidence useful to settle the dispute. (*Id.*)

Plaintiffs moved to have the Riverside court confirm the arbitrator's award, and a hearing was held on January 8, 2016. (doc. 203-9 at 2.) On March 9, 2016,[14] the court issued a judgment

---

[13] In making this finding, the arbitrator also found that the evidence was insufficient to support an award against any of the other corporate or limited liability entities referenced in the testimony or exhibits, including the other defendants to the Riverside case who were not parties to the federal Texas case or Plaintiffs' motion for sanction. (doc. 203-7 at 30.)

[14] The judge signed the judgment on March 9, 2016, but it was filed on March 14, 2016. (*See* doc. 203-10 at 2-3.)

in favor of Plaintiffs in the amount of $605,692, including damages, prejudgment interest, and costs.[15] (doc. 203-10 at 2-5.) On March 7, 2016,[16] Asbra filed a notice of appeal on the order confirming the arbitration award and denying his motion to vacate. (doc. 203-11 at 2-4.) That same day, a certificate of dissolution was filed with the California Secretary of State for AFC. (doc. 203-2 at 2.) Asbra appealed the Riverside court's decision,[17] but he did not seek to stay enforcement pending appeal. (*See* docs. 203 at 5; 203-2 at 2.)

C.     **Motions for Injunction and Sanctions**

On April 26, 2016, the Asbra Defendants filed a motion to enforce the 2013 Settlement Agreement and an application for a preliminary and permanent injunction in the federal Texas case, which had previously been closed following the settlement and agreed dismissal between Plaintiffs and the Windsor Defendants.[18] (doc. 197.) They sought to enjoin Plaintiffs from collecting on the Riverside judgment, or in the alternative, credit for funds received under the 2013 Settlement Agreement be applied to the arbitration award, and a judgment for damages incurred by the Asbra Defendants after the 2013 Settlement Agreement was signed. (*Id.* at 20-21.) Plaintiffs filed a response in opposition to the Asbra Defendants' motion as well as evidentiary objections on May 17, 2016. (docs. 198, 199.) The Asbra Defendants did not file a reply.

---

[15] The judgment included $537,100 in damages, $28,694.25 in prejudgment interest, and $39,897.75 in costs. (doc. 203-10 at 3.)

[16] Asbra's California attorney signed the notice on March 7, 2016, but it was filed on March 8, 2016. (*See* doc. 203-11 at 2.)

[17] It is unclear from the filing whether AFC is appealing as well.

[18] The Texas attorney does not appear to have represented the Asbra Defendants in the California proceedings or in arbitration, but she did appear to represent them in proceedings in the federal Texas case prior to their dismissal and in the Dallas case. (*See* docs. 69 at 1; 203-5 at 2; *see also* doc. 203-6) (noting the Asbra Defendants were represented at the arbitration by different attorneys).

On June 8, 2016, the Court issued a notice of deficiency for the Asbra Defendants' motion, noting that it failed to comply with Local Rules 7.1(b) and (h)[19] and striking it from the record. (doc. 202) The Asbra Defendants never refiled their motion. Plaintiffs sent their Texas attorney a letter on July 7, 2016, informing her that Plaintiffs were prepared to file a motion for sanctions the following day.[20] (doc. 203 at 21-22.) On July 8, 2016, Plaintiffs filed a motion for sanctions against the Asbra Defendants and their Texas attorney for their "frivolous" motion. (doc. 203 at 5.) The Asbra Defendants and their Texas attorney failed to respond, and the motion for sanctions is now ripe for recommendation.

## II. MOTION FOR SANCTIONS

Plaintiffs seek to recover attorneys' fees and costs pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority. (doc. 203.)

### A.     **Rule 11 Sanctions**[21]

Plaintiffs asks the Court to sanction the Asbra Defendants and their Texas attorney under Federal Rule of Civil Procedure 11. (*Id.* at 17-18.)

Rule 11 authorizes a court to impose sanctions on a party who files a pleading for an

---

[19] L.R. 7.1(b) sets forth the requirements for a certificate of conference, and L.R. 7.1(h) establishes the uniform requirements on motion practice, including the brief and certificate of conference requirements. *See* L.R. 7.1(b), (h).

[20] Plaintiffs' letter informed the Texas attorney that "[t]he amount of attorney fees and reimbursable expenses incurred in connection with . . . having to file the Opposition and for the preparation of the Motion for Sanctions [was] $7500," and they asked whether the Asbra Defendants and their Texas attorney intended to oppose the motion for sanctions. (doc. 203 at 21-22.)

[21] Although Plaintiffs' motion addressed § 1927 sanctions first, their request for Rule 11 sanctions will be considered first because the standard under that rule is less exacting than the one for sanctions under § 1927. *See Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 694 (5th Cir. 2010) ("Rule 11 has a lower standard of culpability than § 1927."), *cert. denied*, 562 U.S. 893 (2010); *Wesolek v. Layton*, No. H-12-3210, 2014 WL 1030176, at *6 (S.D. Tex. Mar. 14, 2014) ("The standard for awarding sanctions under § 1927 is higher than that applicable to Federal Rule of Civil Procedure 11.").

improper purpose, such as to harass the opposing party, delay the proceedings, or increase the expense of litigation. Fed. R. Civ. P. 11(b), (c). Sanctions under Rule 11 may be appropriate if a court finds that a document has been presented for an improper purpose, Fed. R. Civ. P. 11(b)(1), (2); the claims or defenses of the signer are not supported by existing law or by a good-faith argument for an extension or change in existing law, Fed. R. Civ. P. 11(b)(2), (3); or the allegations and other factual statements lack evidentiary support or are unlikely to do so after a reasonable opportunity for investigation, Fed. R. Civ. P. 11(b)(3). The purpose of the rule is to "deter baseless filings in district court," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), and "to spare innocent parties and overburdened courts from the filing of frivolous lawsuits," *Zuffante v. Stephens*, No. 3:13-CV-1146-B, 2013 WL 4829193, at *1 (N.D. Tex. Sept. 9, 2013) (quoting *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir. 1987)).

After notice and opportunity to respond, courts finding a Rule 11(b) violation may impose appropriate sanctions. Fed. R. Civ. P. 11(c)(1). These may include monetary and injunctive sanctions, *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359-60 (5th Cir. 1986), and even dismissal, *Bell v. Dunn, Johnston & Brown*, No. 3:10-CV-1-M-BH, 2011 WL 759473, at *3 (N.D. Tex. Feb. 7, 2011) (citing *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003)), *adopted by* 2011 WL 726114 (N.D. Tex. Mar. 1, 2011). Courts have a duty to "impose the least severe sanction adequate" to deter future conduct. *Mendoza v. Lynaugh*, 989 F.2d 191, 196 (5th Cir. 1993) (quoting *Akin v. Q–L Invs., Inc.*, 959 F.2d 521, 535 (5th Cir. 1992)); *accord* Fed. R. Civ. P. 11(c)(4). The moving party has the burden to overcome the presumption that pleadings are filed in good faith. *Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir. 2000).

Rule 11(c)(2) provides that a motion must be made separately from any other motion and

10

must describe the specific sanctionable conduct. Fed. R. Civ. P. 11(c)(2). The rule contains a safe harbor provision that requires that the motion "be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* This requirement is strictly construed and substantial compliance is insufficient. *Morris v. Thaler*, No. 3:12-CV-4916-N, 2013 WL 2383652, at *2 (N.D. Tex. May 31, 2013) (citing *In re Pratt*, 524 F.3d 580, 586-88 (5th Cir. 2008) (addressing "substantially identical" bankruptcy Rule 9011)). Informal notice and opportunity to withdraw is not an adequate substitute for serving a copy of the motion at least twenty-one days before filing the motion with the court. *Pratt*, 524 F.3d at 586-88 (noting courts "have continually held that strict compliance with Rule 11 is mandatory"). A motion for Rule 11 sanctions is appropriately denied when the movant fails to comply with this requirement. *Tompkins*, 202 F.3d at 788. The movant has the burden to show compliance with the safe harbor provision. *See id.*; *see also Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995); *Morris*, 2013 WL 2383652, at *2.

 Here, Plaintiffs' certificate of service indicates that the motion was served on the Asbra Defendants and their Texas attorney on July 8, 2016, the same day they filed the motion for sanctions. (doc. 203 at 23.) Additionally, Plaintiffs sent them an informal letter on July 7, 2016, the day before the motion for sanctions was filed. (*Id.* at 21-22.) Although Plaintiffs sent the Asbra Defendants and their Texas attorney correspondence on July 7, 2016, warning them that they would pursue Rule 11 sanctions, the Fifth Circuit has found that an informal letter does not of itself comply with the service requirements. *See In re Pratt*, 524 F.3d at 586-88. Accordingly, Plaintiffs have not shown that they strictly complied with the safe harbor provision, and their motion for sanctions

under Rule 11 should be **DENIED** on this basis.

**B.**     **28 U.S.C. § 1927**

Plaintiffs also seek sanctions against the Texas attorney under 28 U.S.C. § 1927. (doc. 203 at 14-18.)

Section 1927 of the United State Code, Title 28, provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Before a court can award sanctions under § 1927, it must make detailed findings that the proceedings were both unreasonable and vexatious. *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994). The Fifth Circuit has held this standard requires "that there be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). The liability created under § 1927 is only for excessive costs due to persistent prosecution of a meritless claim. *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991). Courts often use repeated filings, despite warnings from the court, or other proof of excessive litigiousness, to justify sanctions. *See Nat'l Ass'n of Gov't Employees v. Nat'l Fed'n of Fed. Employees*, 844 F.2d 216, 224 (5th Cir. 1988) (noting that this section prohibits "the persistent prosecution of a meritless claim") (quoting *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir. 1988) (en banc)); *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002).

The Fifth Circuit advises courts to impose sanctions under § 1927 "sparingly," and further cautions that except when the entire proceeding has been unwarranted, unreasonable, and vexatious,

and should therefore not have been initiated nor pursued, it will be inappropriate under § 1927 to shift the entire financial burden of an action's defense. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 535 (5th Cir. 1996) (quoting *Calhoun*, 34 F.3d at 1297). Under § 1927, monetary sanctions for expenses, costs, and attorneys' fees may be "imposed only on offending attorneys; clients may not be ordered to pay such awards." *Matta v. May*, 118 F.3d 410, 413-14 (5th Cir. 1997) (citing *Travelers Ins. Co. v. St. Jude Hosp.*, 38 F.3d 1414, 1416 (5th Cir. 1994)).

Here, Plaintiffs argue that § 1927 sanctions are warranted against the Asbra Defendants' Texas attorney because "no reasonable attorney, under the circumstances, would have perpetuated this litigation in this Court after the entry of the Order by the Dallas County District Court based on principles of comity, after the entry of the Arbitration Award, and subsequently, the California Judgement." (doc. 203 at 15.) They also contend that the filing of the motion to enforce amounted to a "groundless multiplication of these proceedings serving the sole purpose of preventing enforcement of the Judgment, [which] is indicative of bad faith." (*Id.*)

Plaintiffs seem to base their contentions on the assumption that the Asbra Defendants' motion was without merit. (*See id.* at 5, 12-17) (characterizing the motion and its arguments as "frivolous," "tenuous," and "creative"). The merits of the motion to enforce were never reached, however. (*See* doc. 202.) It was stricken for technical violations of the Local Rules and not re-filed. *See, e.g., Cappa Fund III, L.L.C. v. Actherm Holding, A.S.*, No. 3:10-CV-897-L, 2011 WL 817384, at *6 (N.D. Tex. Feb. 21, 2011) (noting that sanctions would be inappropriate where a case was decided solely on a procedural ground), *adopted by* 2011 WL 816861 (N.D. Tex. Mar. 8, 2011). Even if the Asbra Defendants' motion would have been denied, sanctions require more than knowledge of an argument's weaknesses. *See Williams v. Sorrells*, No. 3:15-CV-351-M, 2016 WL

13

1392335, at *3 (N.D. Tex. Apr. 8, 2016) (noting "a sanctioning court must do more than disagree with a party's legal analysis"). Additionally, the order dismissing the case noted that "the Court will retain continuing jurisdiction to enforce the Settlement Agreement and its terms," (doc. 196 at 1), and the Asbra Defendants' filed a motion clearly related to that agreement. (*See* doc. 197.)

Even if the Asbra Defendants' motion lacked merit, lack of merit does not equate bad faith or an improper purpose. *See Cappa Fund III*, 2011 WL 817384, at *6. As noted, courts have relied on repeated filings, despite warnings from the court, or other proof of excessive litigiousness to justify sanctions. *Williams*, 2016 WL 1392335 (citing cases). Plaintiffs seem to rely on the decisions of the Dallas and Riverside courts to show that the Texas attorney acted in bad faith by multiplying the proceedings. (See doc. 203 at 14-17.) They have not shown that she previously made the *same arguments* in other proceedings or that she was warned by this Court (or any other) about further filings, however.[22] (*See* doc. 203.) Likewise, Plaintiffs offered no evidence of "specific conduct" on her part to show that she filed the motion in bad faith or for an improper purpose. *See EsNtion Records, Inc. v. Triton TM, Inc.*, No. 3:07-CV-2027-L, 2010 WL 3446910, at *5 (N.D. Tex. Aug. 31, 2010). Their allegations of the *persistent* prosecution of a meritless claim is based on a single motion. This is insufficient to show bad faith. *See Oblio Telecom, Inc. v. Patel*, No. 3:08-CV-0279-L, 2010 WL 99353, at *3 (N.D. Tex. Jan. 8, 2010) (noting "bad faith" of counsel in bringing lawsuit or vexatiously multiplying proceedings cannot be inferred from pleadings alone); *Williams,* 2016 WL 1392335, at *2 (noting the repeated filings, despite warnings, may be used to justify sanctions). Accordingly, even if the Asbra Defendants' motion lacked merit, Plaintiffs have

---

[22] Plaintiffs have not shown that the Texas attorney made arguments regarding the 2013 Settlement Agreement in the Dallas case. (See docs. 203 at 1-23; 203-3 at 2-3.)

14

not shown that the Texas attorney brought it in bad faith or for an improper purpose.

Plaintiffs have failed to meet their burden to establish that the proceedings were both unreasonable and vexatious, and their request for sanctions against the Texas attorney under § 1927 should be **DENIED**.

C. **Inherent Power**

Plaintiffs also generally ask for sanctions against the Asbra Defendants under the Court's inherent power.[23] (doc. 203 at 15-16, 18.)

Courts possess the inherent power "to protect the efficient and orderly administration of justice and . . . to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993) (per curiam). Included in this inherent power is "the power to levy sanctions in response to abusive litigation practices." *Id.* Federal courts have the inherent, discretionary authority to dismiss an action upon a finding of bad faith or a willful abuse of the judicial process. *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995). While courts "exercise caution" in invoking their inherent powers and should "ordinarily" rely on a rule or statute rather than their inherent power, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991), they retain discretion to select the appropriate authority for sanctions, *see First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 516 (6th Cir. 2002). A court finding bad faith may impose an appropriate sanction under its inherent powers when Rule 11 sanctions are unavailable due to noncompliance with the safe harbor provision. *Elliott v. Tilton*, 64 F.3d 213, 216-17 (5th Cir. 1995); *First Bank of Marietta*, 307 F.3d 501 at 511-19. Bad faith conduct includes conduct that is

---

[23] Plaintiffs do not appear to be seeking sanctions against the attorney under the Court's inherent power. (*See* doc. 203 at 18.)

motivated by improper purposes such as harassment or delay. *See Coghlan v. Starkey*, 852 F.2d 806, 814 (5th Cir. 1988) (per curiam). In this respect, it "resembles" the requirements of Rule 11(b)(1). *Chambers*, 501 U.S. at 46 n.10.

Here, Plaintiffs generally argue for sanctions under the Court's inherent power because the Asbra Defendants acted in bad faith and abused the judicial process by filing their motion in the federal Texas case. (*See* doc. 203 at 18.) In support, Plaintiffs appear to rely on the Asbra Defendants' "willful disregard" of the Riverside court's judgment. (*Id.* at 16.) As noted, the merits of the Asbra Defendants' motion to enforce were never reached. (*See* doc. 202.) The order dismissing the case noted that the Court retained continuing jurisdiction to enforce the Settlement Agreement, (doc. 196 at 1), and the Asbra Defendants' filed a motion related to that agreement. (*See* doc. 197.) Even if the motion lacked merit, Plaintiffs have not shown that the Asbra Defendants' filed their motion to enforce for an improper purpose or that sanctions are otherwise warranted under the Court's inherent power. *See Cappa Fund III*, 2011 WL 817384, at *4-5 (declining to sanction a party under the court's inherent authority). Plaintiffs' request to sanction the Asbra Defendants under the Court's inherent power should therefore be **DENIED**.

### III.  RECOMMENDATION

Plaintiffs' motion for sanctions should be **DENIED**.

**SO RECOMMENDED** on this 3rd day of February, 2017.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE